Mr. Quigley, when you're ready. Good morning, Your Honors, and may it please the Court, James Quigley of McCool-Smith for Appellant Xerox. The Board in this case incorrectly held that the determining limitation does not require the possibility of unexpected responses, when, in fact, the intrinsic record shows that that determining limitation does require the possibility of unexpected responses. And with that proper construction of the determining limitation, the prior art… That's not in the plain language of the claim, right? The claim language has said determining whether the response matches the expected response. Correct. The language of the claim is determining whether… So you want to read in determining whether the received response matches the expected response or is an unexpected response. Not quite, Your Honor. In order for the determining limitation to have meaning, the condition must either be possible to be true or false. And so if it's always true, then the determining limitation loses meaning. And then the second issue with the construction with respect to the language is that the received response should be different than the expected response, given that under Phillips, different terms are presumptively going to have different meanings, where here the Board held that those terms have the same meaning, essentially. Is another way to frame your argument about the possibility of unexpected responses to say that at least one response needs to be preferred over other responses? I'm not sure that that's what we have in mind. An expected response, and maybe this is where the confusion is. We have a content package that's received, and the content package has a content piece and a set of rules corresponding to the content piece. The set of rules includes a trigger condition as well as an expected response, which could be one or more. And so those expected responses are going to correspond with the content pieces. And so what should happen is when a user responds to a presented content piece, that response will be checked against the expected responses to see if it matches. And so if expected responses and received responses entirely overlap, there's no difference in the claims. Are you arguing that there needs to be some comparison to an unexpected response in memory, or how is that being done? So an unexpected response isn't in memory. That's sort of the point, that within a content package, we can look at the Table 1 example in the 599 patent, Appendix 175 to 177. A computer can only hold so many expected responses, so in this Japanese language embodiment, there's only so many correct ways to mimic a Japanese word. So maybe I should rephrase it then. Are you arguing that you need to compare to what would be expected responses in memory? Correct. Okay. Yeah, you should compare it to what's in memory, but in order for determining whether to have meaning, it has to be possible for it to be false. What do you think is the proper construction for this? The proper construction would be determining whether the received response matches the expected response where there's a possibility of unexpected responses. How is that different than what the board said? Because the board held that there wasn't a requirement for the possibility of unexpected responses. How does that change the analysis to the prior art? Sure. So with respect to Snap's Rosenberg reference, the board itself held that Rosenberg has four expected responses, no unexpected responses. So Rosenberg was a simple device that Snap put forth that has four buttons where a user… Yeah, but what makes the difference? If they do something that's not an unexpected response, then what happens? So that wasn't Snap's theory. Snap's theory was that… I don't care. That's a question. What happens? We don't know because that wasn't what was put forth. What happens in yours if somebody puts in an unexpected response? There's an action incorrect, and there's an action that's taken. If you look at Table 1 in this case… Well, how is that an unexpected response? It's a list of here's 10 expected responses, and you take this action. If you get anything else, then you take that action. That's just a different kind of unexpected response. It's not… I don't see how this, what your argument makes any difference whatsoever to the board's analysis here. Sure. So an unexpected response is not within memory. It's not stored. The system can't know every possible response. Where does it say that expected response has to be something that's specifically stored in the memory? That sounds like you're adding even more words to this pretty simple phrase. That's part of the receiving a content package limitation, where the content package has a content piece and a set of rules that correspond to the content piece. If we agree with the board on this, does it get rid of the entire case? If you agree with the board on claim construction, then SNAP's prior art is invalidated, yes. There are still issues with respect to X and meta, but yes, that's the SNAP. Well, would we even have to reach the X and meta issues if we affirm in the SNAP? You would not. We would not. Okay. Is your construction… I know you said it to Judge Hughes, but I'm still confused. Would you be requiring two determinations under your construction? That is, the system has to determine is the response expected and then determine if the response is unexpected?  It would just be determining whether or not the received response matches one of the pre-programmed expected responses. And if it does, then there's an action that's performed. And if it doesn't, then there wouldn't be one. And again, then, how is that different than what the board construed here, the determining requirement to be? Well, we can see that with the SNAP prior art reference. The SNAP prior art reference, as the board acknowledged with respect to the substitute claims, envisions only expected responses. And so the board held that that system that only has expected responses is still invalidated, even though there's no possibility of unexpected. So what if a user is presented with a pop-up box with a single option, like the word okay or something like that? Is the system determining if the response matches an expected response when the user clicks okay? Without having the full system that seems right. I mean, there could be an okay button or a cancel button, and both of those in that system would be expected responses, because the system is obviously awaiting one of those responses. That's similar to SNAP's Rosenberg, where it has four responses to a reminder. And they're each pre-programmed, and each of those is therefore expected. Similar to a multiple choice question, this is one of the issues incorrect. The board and SNAP and MEDA and X equated incorrect responses with unexpected responses. A multiple choice question, no different than Rosenberg's example, where there are four options presented. An incorrect response could still be expected in that instance, because that would be one of the options that was pre-programmed in as expected. And in fact, the board agreed that that was true in an inconsistent ruling with respect to the substitute claims, which it said were substantially similar on this issue, when it held that expected responses aren't necessarily correct, because expected responses can be incorrect. I'd like to pursue your multiple choice metaphor, because I've been really confused by your position, and maybe this will help. So if we can picture a final examination that has a multiple choice part, and has an open-ended short answer response part, okay? So there's two parts to the exam. Under what you think is the right construction, do your claims cover both multiple choice scenarios as well as short answer scenarios? Not the multiple choice, but the short answer. It doesn't even cover the multiple choice. The multiple choice has all expected responses. So your claims are not broad enough to cover multiple choice. In a system like Rosenberg, where for instance it would only present four possible options. So the argument that the board erred is that the board understood your claims as broad enough to cover both multiple choice as well as open-ended short answers. That's the problem that you see. One of, yes. And so then your construction would limit your claims to something analogous to short answer, where you could write anything in that you want. Or the table one embodiment, where there's essentially an unlimited number of ways to incorrectly mimic a phrase. And where can I see the construction that you ask the board to adopt, which is presumably the one you would want us to adopt? Where can I see that written out? What we've said in the papers to the board in here is that we would just ask that it be clear that it has to be the possibility of unexpected responses as well. I think he's asking for like a JA page or something to that effect. I am, but are you acknowledging you've never put in words what the preferred construction is? I'll look when I sit down and see if I have something to point you to. Thank you. And so this construction also matters to both the X and the meta proceedings. With respect to X, X put forth the palace reference. The problem with the palace reference as X relied on it is that it also relies on all enumerated expected responses. And the board, in its final written decision at appendix pages 126 to 127, the sole basis for its decision that the X palace reference was invalidating as to this determining limitation, was that the palace reference had the possibility of incorrect responses. But again, incorrect responses are not necessarily unexpected responses. And so what you might hear from my friend when she stands up and she argues for X is that, well, there's this other example in palace called words filling. There's a few problems with that. First, that wasn't raised by X in its petition or its reply. It was waived. It wasn't ruled upon by the board in its final written decision. And third, if you look at the palace reference itself, appendix page 9935, word fill-in is but one little box within one figure on one page with no explanation of what it means at all. And so it's not even clear that word fill-in would even make a difference. And with respect to META, the board and META relied upon a combination of Lamont and Wolfe, where the board and META both agree that the presented content piece would be an audio or video file from Lamont. The problem is there's no prompt or there's no reason for a user to even respond to that audio or video file. And so even with the combination of Lamont and Wolfe, there's no possibility of any response, much less an expected or unexpected response. So unless Your Honor has further questions. Just one. The board found that the independent and dependent claims are unpatentable, correct? Yes, Your Honor. And unless I misunderstood, your brief only addressed the independent claims? Correct, Your Honor. Are you conceding that the dependent claims are unpatentable for our purposes? Yeah, there might have been an argument in the briefing about how the dependent claims impact the construction of the independent, but not separate patentability arguments. So they rise and fall together, right, the independent and dependent claims? Well, do they rise and fall together, or are you saying even if you win on the independent claims, your dependent claims are gone because you didn't appeal that? If the independent claims fall, the dependent claims fall in this procedure. If you win on the independent claims, are the dependent claims still dead, or are you asking us to revive them? Those would still be alive because they all depend upon what would be live. And do you say that in your brief? I can look for a cite, Your Honor. Okay, thank you. Unless Your Honor has further questions, I'll reserve my time for rebuttal. Mr. Tchaikovsky, am I saying that right? Yes. Thank you, Your Honor. You're SNAP, right, so you're going to address the claim construction argument? Yes, Your Honor. I'm here to address the claim construction argument. Do you have any questions on the claim constructions? Obviously also Rosenberg, by chance. And then are there any questions regarding some of the other issues covered in terms of references or combinations that were covered by the court counsel? I assume you agree that if we agree with the board on claim construction that this resolves the case? Correct. I mean, all claims are invalidated. In fact, 1 through 25, every claim in the patent would be invalidated if you agree with the board, yes. And also, if there's any questions, Your Honor, I mean, obviously for us it's an undecided limitation. It's a limitation that's undecided in the claims. These are method claims that are performed. These are not system claims with a capability. It's undecided in the intrinsic evidence. It's not in the specification. It's not in the prosecution history. So we focus on the actual claim language here. And there's not the possibility of an unexpected response anywhere to be found. And under that construction, as you said, Your Honor, the claim should be invalidated under the Rosenberg reference and anticipated. I found it interesting that Mr. Quigley mentioned this analogy of the multiple choice questions. And in fact, during one of the hearings, he brought that up. It's A2981, the multiple choice analogy. And saying in that multiple choice analogy where you have one correct response and three incorrect responses, that that is all expected responses. That's exactly what's covered here is all expected responses. That's similar to the Rosenberg reference. There's no need to get to the possibility of unexpected responses unless you're just trying to avoid anticipation. Frankly, if you looked at A279 and A2980, Mr. Quigley, in describing Table 1 and Table 2 of the specification, said both of those tables in the specification are all expected responses. The mimicking with respect to Table 1 and the okay with respect to Table 2. And those are all expected responses. We find it very difficult to imagine how one, can you imagine all the issues that would transpire if you were to insert the possibility of an unexpected response and all the other parties that would come before you, Your Honors, if this would be adopted. They would be saying, hey, look for these additional limitations in the claims to be added. What happens in the prior art if you get something that is not written into it as an expected response? So if you have five separate responses in the computer or the program and instruction to take action, if you type in five different things, what happens if you type in nothing or yell at the computer? I mean, that's an unexpected response, but I don't understand why. I am baffled as to why this matters, frankly, because if you don't do something that the computer is going to recognize, which sounds like an expected response, then the computer is either going to return an error message or do nothing. What does the prior art do in that situation? Well, at least the prior art before the board in this situation, that wasn't addressed. There's no addressing of the situation of you could, frankly, look at Rosenberg and look at figure five of Rosenberg and see that there are keys below the figure where the content is displayed. But it doesn't discuss, nor was it discussed before the board, what would happen if someone actually touched any of those other keys. It wasn't relevant to the claims at issue because the claims at issue don't have this possibility of an unexpected response. We don't deal with the theoretical. It's just a match of expected responses. The okay, that's presented, and in Rosenberg, it's the four options. Which is actually what the claim level also does. Yes. You determine whether the received response matches the expected response to take action. That's correct. I mean, we dealt with possibilities of unexpected responses as you're on a question. I don't know how you would deal with the infinite number of potential inaccuracies like if we took table one. Well, I assume if their program has the capability to take action in response to something that's not pre-programmed as an expected response, that's still in some ways expected. Because if you have a list of ten things, take these ten actions if you get that. If not, take this action. That still sounds to me like matching a received response to an expected one. It's just an expected one of all others or something like that. That's correct. You hit the nail on the head. If the system was able to handle other responses, let's call them other or unexpected, yes. Then that would still be matching an unexpected response in that instance. We don't need any additional language. So when they argue that the claims need to require the possibility of an unexpected response, you say that that's not required, that that is not part of their claims to contemplate the possibility of an unexpected response. It's not part of the claim, correct. It's not part of their claims. That's correct. So their claims don't cover the short answer response in an exam analogy, correct? The claims don't have limitations that require covering that analogy. Then it goes to what Judge Hughes had mentioned with respect to if there's an other category. Sure, the claims might cover the matching of another category. But in your specific example, the claims don't cover that. So your prior art does not teach or disclose that short answer, but not a problem for you, you say, because his claims don't cover that either. That's correct. Our prior art is all expected responses. And this is why you have them coming up with this limitation of having the possibility of an unexpected response, because the prior art is only expected. That is, Rosenberg, at least, the SNAP prior art, is only expected responses. Do you have anything further? I do not, if you have questions about any of the prior art combinations of X. Your side has some argument time left, although I would suggest you limit it to the arguments he made during his opening. Mr. Morton, I think you're up next. Thank you, Your Honors. May it please the Court, Philip Morton, on behalf of MetaPlatforms. I want to address the claim construction. We agree that if you adopt the board's construction, or if you adopt their construction, you don't need to address the meta prior art. And the meta prior art does disclose both expected and unexpected responses, which is not something that was disputed by appellant in its papers here. The one issue that they did raise with respect to the Lamont and Wolfe combination, there is substantial evidence in the record supporting the combination of those two references at Appendix 82 to 85. And we direct your honors to that, to support that. Are there any other questions? I have one quick housekeeping question. Yeah. You have a subset of the claims, right? We do. As opposed to SNAP has all 1 through 25? Yes. Is there anything, I assume that the reason you just did a subset is those were the ones that were asserted against your particular client? Absolutely correct, yes. Okay, good. Thank you. Thank you, Your Honor. Ms. McComas. Good morning. May it please the court. And ditto. If the court, we'll just stand on our briefs unless the court has any questions. I mean, clearly. Our colleague Judge Lori says you never get penalized for giving the court back time. I wholeheartedly concur. Mr. Quigley, you've got about three and a half minutes. I'll make it brief, Your Honor. To the question about where in the PTAB briefing, we provided an express construction. We didn't provide that express construction. We said it just must require within the determining limitation, the possibility. And how about to us? Do you have a construction? The same argument was made to you. No sort of quotation that I can provide you, Your Honor. With respect to Your Honor's question about, you know, what happens when prior art, or sorry, when the prior art encounters, you know, something other than what's on the screen or some other button is pressed or some other routine. That wasn't addressed below. I don't think it would be appropriate to address that now without that developed record. You know, if that's something that needs to be addressed, that should be the board that does that in the first instance. And then, we'll just say we do dispute, contrary to what my friend said, that the meta prior art discloses the possibility of unexpected responses because as we just talked about in the briefing, it wouldn't be combined and there are problems with the presented content piece, not even being something you can respond to. Thank you, Your Honors. Thank you. The case is submitted.